## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 02 2020, 11:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Kelley Y. Baldwin
Yeager Good & Baldwin
Shelbyville, Indiana

Isaac G.W. Trolinder
Trolinder Law, LLC
Shelbyville, Indiana

ATTORNEY FOR APPELLEE

Michael C. Cooley
Allen Wellman McNew Harvey, LLP
Greenfield, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Sharon Kay Gahimer

*Appellant-Petitioner,*

v.

Gary Wayne Gahimer,

*Appellee-Respondent.*

April 2, 2020

Court of Appeals Case No. 19A-DN-2473

Appeal from the Decatur Circuit Court

The Honorable Timothy B. Day, Judge

Trial Court Cause No. 16C01-1806-DN-330

**Bradford, Chief Judge.**

# Case Summary

On June 18, 2018, Sharon Kay Gahimer filed a petition to dissolve her eleven-month marriage to Gary Wayne Gahimer. The trial court issued a dissolution decree on October 8, 2019, dissolving the parties' marriage and ordering an equal distribution of the marital estate. Sharon appeals the trial court's order, arguing that the trial court abused its discretion by equally dividing the parties' marital estate. We affirm.

# Facts and Procedural History

Sharon and Gary were married on July 29, 2017. Prior to the parties' marriage, Sharon and Gary each owned a home. When they married, Sharon and Gary lived in the home that had been owned by Sharon prior to the marriage ("the marital residence"). Sharon refinanced the mortgage to add Gary's name to the deed and mortgage. Sharon and Gary also took out a line of credit against the marital residence. They used the funds from the line of credit to make a number of improvements to the marital residence, including adding an in-ground pool and a pole barn, which was to both house Gary's business equipment and be used for entertainment purposes.

After the parties married, they sold Gary's home. The proceeds from the sale were divided between one of Gary's retirement accounts and debts connected to the marital residence. During the parties' marriage, Sharon was employed by Honda Manufacturing and Gary was self-employed as a general contractor.

[4] Less than one year after getting married, on June 18, 2018, Sharon filed a petition seeking the dissolution of the parties' marriage. The trial court conducted a two-day evidentiary hearing on June 13 and September 26, 2019. At the conclusion of the evidentiary hearing, the trial court issued an order in which it dissolved the parties' marriage and ordered an equal distribution of the parties' marital estate.

# Discussion and Decision

[5] Sharon challenges the trial court's division of the marital estate on appeal. In doing so, she argues that the trial court abused its discretion in determining that an equal distribution of the marital estate was just and reasonable.

> The division of marital assets lies within the trial court's discretion, and as such, we reverse only on a showing that the court has abused its discretion. An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. In conducting our review, we neither reweigh evidence nor reassess witness credibility; rather, we consider only the evidence most favorable to the trial court's disposition.

*Bock v. Bock*, 116 N.E.3d 1124, 1130 (Ind. Ct. App. 2018) (internal citations omitted).

[6] With regard to the division of a marital estate, Indiana Code section 31-15-7-5 provides as follows:

The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse:

    (A) before the marriage; or

    (B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

    (A) a final division of property; and

    (B) a final determination of the property rights of the parties.

"Per the statute, a trial court starts with the presumptive fifty/fifty division of marital assets and then determines whether the presumption has been rebutted by relevant evidence indicating that an equal division would not be just and reasonable." *Bock*, 116 N.E.3d at 1130. "If the court deviates from the

presumptive equal division, it must state its reasons for that deviation in its findings and judgment." *Id.*

[7] Sharon argues that the trial court abused its discretion in ordering an equal division of the marital estate because such a division would be unjust and unreasonable. In considering the parties' arguments and the evidence presented during the two-day hearing, the trial court stated the following:

> Okay. So, let's look at Petitioner's Exhibit 24. I'm working a lot off it. I'm going to change two numbers on it. I feel like Petitioner's 24 is a depiction of all the assets and liabilities as they existed, close as we can on date of filing, date of your separation. I'm not putting a whole lot of weight in what you both had on the date that you married, and I'll tell you why – it's pretty comparable. Surprisingly, if you add up all of your assets, and debts, and houses, and everything, you both had a comparable net worth when you came into this, it appears to me. That comes into play, especially in a short-term marriage if somebody had a lot more than the other, okay? And I'm talking more than a few thousand dollars here. So -- and that would be a reason for me to what -- what you've heard bantered around, deviate, okay?
>
> … What the law tells me to do though is, no matter how short or long the marriage is, look at what the assets and liabilities are at the end of it, which is date of filing. So, that's what I think is a fairly accurate depiction in Petitioner's 24. It has the appraisal of the house. It has the two liens against the house. It has everyone's vehicles. It has personal property, bank accounts, which I know are disputed, retirement accounts, which they don't appear to be disputed, and the debts. I mean, there -- and I seen [sic] these numbers -- we had two hearings now, and they're starting to repeat. So, I think it's a pretty accurate depiction.

Tr. Vol. II pp. 245–46. In addition to Petitioner's 24, the trial court considered evidence relating to the parties' personal property. Finding that neither party had provided an accurate accounting of the value of their personal property, the trial court, after reviewing the parties' claimed personal property, attributed a value of $45,000 in personal property to Gary and a value of $10,000 in personal property to Sharon. The trial court continued its consideration into whether to deviate from an equal distribution of the marital assets, stating:

> Now, with those two numbers, if I was to use every other number in this document, and again I'm using Sharon's numbers, because I'm trying to show you how fair I'm trying to be with both of you. If I use Sharon's numbers, the total net marital estate is $487,988. Okay? I don't think there's a lot of dispute. I mean, you may dispute 20,000 one way or the other, but I don't think there's a big dispute that if you added everything up, retirement accounts, the house, and subtracted the debts, you're looking at $487,988. If you divided that number by two, surprisingly, amazingly, it's pretty close to what you both came into this with, it's not far -- not far off.
>
> Now, of that $487,988, Gary has in his pocket, $172,758. Sharon has in her pocket, $315,230, if I leave things the way they are. Okay? The net between what Sharon has and Gary has is $142,472. Okay, that's how much more Sharon has than Gary…. I'm taking into account whether I deviate or not, a couple of things. One is, you know, one of you has to find a place to live. One of you have to start over to a certain degree. And I think that's going to be a greater expense to Gary than Sharon, because if Sharon keeps the house, that's a benefit to her, to keep it…. So, if Sharon keeps the house, if she chooses to do so, then all these numbers just flow through. I'm not taking – I'm not ignoring the proceeds from Gary's house, because they are in these numbers. They're in number one, the retirement

accounts that Gary set up. They're also in the greater value in the house. The less mortgage in the house, because they all were used for those things. So, I think those -- that number's there, and you can pull it out of there, so he's not losing anything there.

Tr. Vol. II pp. 247–48. Concluding that the parties' failed to rebut the presumption that an equal distribution of the marital estate would be just and reasonable, the trial court ordered an equal division of the marital estate. In doing so, the trial court assigned certain debts to each of the parties, awarded certain assets to each of the parties, and ordered Sharon to pay a cash equalization payment to Gary in the amount of $71,236.

[8] Sharon argues that the trial court abused its discretion in ordering an equal distribution of the marital estate, asserting that an equal distribution of the marital estate is unjust because she "contributed more to the acquisition of marital property during the parties' marriage." Appellant's Br. p. 18. In making this assertion, Sharon acknowledges that the parties' contributions toward certain improvements completed on the marital real estate were "relatively equal." Appellant's Br. p. 20. Her assertion instead appears to be based on her claim that she earned significantly more income than Gary during the parties' marriage.

[9] With regards to the parties' contribution to the acquisition of marital property and the income earned by the parties during the marriage, the trial court stated the following:

The question at the very bottom line is, do I do anything other than a 50/50 deviation? I mean, that's really all both of your attorneys have been arguing over the whole time, and the argument, I mean, the best argument you got on the table is, Sharon made more money than Gary, or Gary made a lot less money than Sharon. I don't know that's necessarily the case.… I don't know that I can necessarily say that Gary made a significant amount less, based solely on his tax return, and that's what Sharon is kind of asking me to do, is to look at whether there's a profit or a loss on the tax return.

I've been in business on my own, and I know how that works, and I know somewhat what Gary is saying is accurate. You don't want to show an income … [s]o, you look for ways to expense. And if in 2018 you expense that whole, well then you both benefited from expense, because you got money back on your return. But, that also contributes to making it look like Gary didn't make much money. You know if you added that back, you know there's forty-some thousand dollars right there of income that he had. But, by the same token when you operate your business off your property, you get to write off a lot of things that are benefits to the people living on that property, utilities, gas, fuel for your vehicles, insurance for your vehicle, all that gets absorbed in the ultimate, here are my expenses, IRS.

So, I can't find that he made a significant amount less, he's made it differently. And it's not uncommon at all that if you got income in November, that you start looking at, and say well I better buy a bunch of things for my next job, so I can expense that, so I don't have such a tax liability in April. I mean, you can do those things when you're in your own business, and I don't have any doubt that he did that.

I think he also contributed some in-kind labor, maybe not a lot, but some during the construction of the pole barn, and maybe some things around the house. But, there again, all in all, what I'm getting to, and trying to do it gently, is to say I don't find that

there, in this short of a marriage, is a reason to deviate from an equal division. When I feel like you both came in pretty comparable in your earning abilities, and your assets, and liabilities, and your, you know, what I'm trying to do is balance out what we're looking at when the smoke clears 11 months later, what we have, as far as assets and liabilities, and whose got them.

Tr. Vol. II pp. 248–50. Sharon has failed to convince us that the trial court's findings relating to the parties' pre-marriage assets, contributions, and income are clearly against the logic and effect of the facts and circumstances before the trial court. Sharon's challenge to the trial court's order effectively amounts to nothing more than a request for this court to reweigh the evidence, which we will not do. *See Bock*, 116 N.E.3d at 1130.

[10] Furthermore, we disagree with Sharon's additional argument that the trial court "should have set over to each party his/her pre-marriage value of his/her retirement and equally divided only the appreciation over the course of the marriage of such assets." Appellant's Br. p. 26. In making this argument, Sharon effectively asserts that only the appreciation of the parties' retirement accounts should have been included in the marital estate rather than the full value of the retirement accounts. We disagree.

> It is well-established in Indiana that all marital property goes into the marital pot for division, whether it was owned by either spouse prior to the marriage, acquired by either spouse after the marriage and prior to final separation of the parties, or acquired by their joint efforts. This "one-pot" theory insures that all assets are subject to the trial court's power to divide and award. While the trial court may ultimately determine that a particular asset

should be awarded solely to one spouse, it must first include the asset in its consideration of the marital estate to be divided.

*Hill v. Hill*, 863 N.E.2d 456, 460 (Ind. Ct. App. 2007) (internal citations omitted). Accordingly, the trial court did not abuse its discretion by including the full value of the parties' retirement accounts in the marital estate.

[11] The judgment of the trial court is affirmed.

Baker, J., and Pyle, J., concur.